UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

KEITH ROMERO AND                          CIVIL ACTION 6:10-cv-0077
MICHELLE ROMERO

VERSUS                                    JUDGE DOHERTY

NORTH TRAIL RV CENTER AND                 MAGISTRATE JUDGE HANNA
NEWMAR CORPORATION

## REPORT AND RECOMMENDATION

(Rec. Docs. 7 and 14)

Before the court are defendant North Trail RV Center's motion to dismiss for lack of personal jurisdiction and/or alternative motion to transfer (Rec. Doc. 7) and defendant Newmar Corporation's motion to transfer (Rec. Doc. 14). The motions are opposed. For the reasons set forth below, the undersigned finds that this Court has no personal jurisdiction over North Trail and recommends that the claims asserted against North Trail and Newmar in this lawsuit be transferred to the United States District Court for the Middle District of Florida.

## BACKGROUND

In March 2008, Keith and Michelle Romero purchased a new 2008 Newmar King Aire recreational vehicle ("RV") from defendant North Trail RV Center.[1] The RV was manufactured by defendant Newmar Corporation[2] and cost $738,434.18.[3] After the purchase, the Romeros allegedly encountered numerous problems with the RV. They claim that the RV was improperly manufactured, installed, and delivered.[4] They allege that they have not been able to use the RV as often as they would have liked and that, when used, the RV did not work properly and once left them stranded out of state.[5] The Romeros also claim that they gave the defendants numerous opportunities to properly repair the alleged defects in the RV, and that repairs were attempted but without success.[6] The Romeros allege that they would not have purchased the RV had they known that the RV would have so many problems.[7] They

---

[1] Rec. Doc. 1-2 at ¶2.

[2] Rec. Doc. 1-2 at ¶3.

[3] Rec. Doc. 1-2 at ¶¶2, 4.

[4] Rec. Doc. 1-2 at ¶6, 7.

[5] Rec. Doc. 1-2 at ¶7.

[6] Rec. Doc. 1-2 at ¶8.

[7] Rec. Doc. 1-2 at ¶10.

now seek to rescind the sale and/or obtain a reduction in the sale price.[8]   They also

seek to recover damages, attorneys' fees, and interest.[9]

North Trail filed a motion, under Rule 12(b)(2) of the Federal Rules of Civil

Procedure, to dismiss the Romeros' petition for lack of personal jurisdiction or,

alternatively, for transfer of the lawsuit to the United States District Court for the

Middle District of Florida, under 28 U.S.C. § 1406(a) and/or § 1404(a).[10]   Although

Newmar does not contend that this Court lacks personal jurisdiction over it, Newmar

also seeks to have the lawsuit transferred to the Middle District of Florida, under 28

U.S.C. § 1404.[11]

Oral argument on both motions was held on May 26, 2010.  The undersigned

Magistrate Judge deferred ruling on the motions and ordered the parties to submit, not

later than July 26, 2010, supplemental briefs supported by summary-judgment-style

evidence addressing the issue of this Court's personal jurisdiction over North Trail.[12]

North Trail and the plaintiffs submitted supplemental memoranda with evidence.[13]

---

[8]      Rec. Doc. 1-2 at 6.

[9]      Rec. Doc. 1-2 at 6.

[10]     Rec. Doc. 7.

[11]     Rec. Doc. 14.

[12]     Rec. Doc. 18.

[13]     Rec. Docs. 19 and 20, respectively.

## DISCUSSION

This Court must decide whether it has personal jurisdiction over the plaintiffs' claims against North Trail and whether this matter should be transferred to an appropriate court in Florida.

## A.   THIS COURT LACKS PERSONAL JURISDICTION OVER NORTH TRAIL.

When, as in this case, a nonresident defendant challenges personal jurisdiction, the plaintiffs, as the parties seeking to invoke the power of the court, bear the burden of proving that jurisdiction exists.[14]  Because North Trail's motion will be decided without an evidentiary hearing, the plaintiffs are required to present facts sufficient to constitute a prima facie case of personal jurisdiction to satisfy their burden.[15]  A prima facie showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record.[16]  This Court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the

---

[14]     *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[15]     *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

[16]     *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

plaintiffs.[17]  But the court is not required to credit conclusory allegations, even if left uncontroverted.[18]

In determining whether personal jurisdiction is proper, a district court sitting in diversity, as in this case, applies the law of the forum state in which it sits.[19]  The Louisiana Long-Arm Statute provides that this Court may exercise personal jurisdiction over any nonresident so long as the basis for such jurisdiction is consistent with the United States Constitution.[20]  Consequently, the limits of the Louisiana Long-Arm statue are coextensive with the limits of constitutional due process.[21]  This Court need only determine whether subjecting North Trail to suit in Louisiana would be consistent with the Due Process Clause of the Fourteenth Amendment.[22]

---

[17]     *Central Freight v. APA*, 322 F.3d at 376; *Alpine View v. Atlas*, 205 F.3d at 214; *Stripling v. Jordan Production Co.*, 234 F.3d 863 (5th Cir. 2000).

[18]     *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[19]     Fed. R. Civ. P. 4(e).

[20]     La. R.S. 13:3201.

[21]     *Alonso v. Line*, 02-2644 (La. 05/20/03), 846 So.2d 745, *cert. denied*, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1192 (La. 1987).  Texas's long-arm statute is also coextensive with the federal constitutional limits of due process. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008).  Therefore, Fifth Circuit cases regarding personal jurisdiction under that statute are equally applicable.

[22]     See, e.g., *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when:  (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.[23]  In other words, due process is satisfied when the defendant's connection with Louisiana is such that the defendant should reasonably anticipate being haled into court in Louisiana.[24]

Minimum contacts may give rise to either specific jurisdiction or general jurisdiction.  Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.[25]  General jurisdiction exists if the defendant has engaged in continuous and systematic activities in the forum state.[26]  The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.[27]  Therefore,

---

[23]    *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[24]    *Latshaw v. Johnston*, 167 F.3d at 211.

[25]    *Walk Haydel v. Coastal Power*, 517 F.3d at 243.

[26]    *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

[27]    *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant.  Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.[28]

To determine whether this Court has personal jurisdiction over North Trail in this lawsuit, it is necessary to first evaluate North Trail's contacts with the State of Louisiana.  If North Trail has sufficient contacts to satisfy specific or general jurisdiction, then the second part of the analysis requires an evaluation of the fairness of exercising jurisdiction over North Trail.

The inquiry used to determine whether general jurisdiction exists is "dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum."[29]  A three-step analysis is applied with regard to specific jurisdiction.  First, it must be determined whether the defendant has minimum contacts with the forum state or, in other words, purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.[30]  Random, fortuitous, or attenuated contacts are

---

[28]     *Luv N' care v. Insta-Mix*, 438 F.3d at 469.

[29]     *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999).

[30]     *Nuivo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

insufficient.[31]  Second, it must be determined whether the plaintiff's cause of action

arises out of or results from the defendant's contacts with the forum.[32]  Finally, if the

plaintiff satisfies the first two prongs, the burden shifts to the defendant to defeat

jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair

or unreasonable.[33]

North Trail contends that it has insufficient contacts with the State of Louisiana

to support the exercise of jurisdiction by this Court.  The plaintiffs contend, to the

contrary, that North Trail's contacts with the State of Louisiana are sufficient for this

Court to exercise jurisdiction over North Trail.  The evidence submitted by the parties

establishes the following facts.

North Trail is a corporation organized under the laws of the State of Florida,

and its business is located in Fort Myers, Florida.[34]  It has no distributorship, repair

facility, place of business, agents, or employees in the State of Louisiana.[35]  It owns

no movable or immovable property in Louisiana.[36]  It has a website, which provides

---

[31]     *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[32]     *Nuivo Pignone v. STORMAN ASIA*, 310 F.3d at 378.

[33]     *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

[34]     Rec. Doc. 7-1 at 4.

[35]     Rec. Doc. 7-1 1, ¶4.

[36]     Rec. Doc. 20-1 at 6, Interrogatory No. 20.

general information, but it is not possible to purchase an RV through the website.[37]

Instead, a purchaser must appear in person at the dealership in Florida in order to

purchase an RV from North Trail.[38]   North Trail does not directly advertise in

Louisiana,[39] but it does advertise in two national publications, Motorhome Magazine

and Woodalls.[40]

After Mr. Romero looked at photographs of the RV on North Trail's website

and spoke with a North Trail employee on the telephone, he and Mrs. Romero

traveled to Florida to see the RV.[41]   In Florida, the Romeros inspected the RV and

took it for a test drive.[42]   While in Florida, Mr. Romero negotiated the purchase price

of the RV,[43] and the Romeros agreed to purchase the RV.[44]   The sale documents were

executed in Florida.[45]   Mr. Romero used his credit card to make a deposit against the

---

[37]   Rec. Doc. 7-1 at 1-2, ¶6.

[38]   Rec. Doc. 7-1 at 1-2, ¶6 .

[39]   Rec. Doc. 7-1 at ¶6.

[40]   Rec. Doc. 20-1 at ¶19.

[41]   Rec. Doc. 13-1.

[42]   Rec. Doc. 7-1 at 1, ¶5.

[43]   Rec. Doc. 13-1.

[44]   Rec. Doc. 7-1 at ¶5; Rec. Doc. 13-1.

[45]   Rec. Doc. 7-1 at 1, ¶3.

purchase price, the Romeros negotiated the trade-in of their older RV as part of the down payment, and Mr. Romero authorized a wire transfer from his bank in Louisiana to North Trail's bank in Florida for the payment of the remaining balance.[46]   The Romeros were charged over $11,000 in Louisiana sales taxes as a part of the purchase price.[47]   North Trail was required to charge the Louisiana sales tax pursuant to a reciprocity agreement between Louisiana and Florida and, if the Louisiana tax had not been assessed, then Florida sales taxes would have been charged.[48]   North Trail delivered the RV to the Romeros in Louisiana, and North Trail took possession of the Romeros' older RV, which was being traded in.[49]

Mr. Romero stated in his affidavit[50] that he spoke on the telephone with John Wicks of North Trail on numerous occasions regarding the problems he was having with the RV and regarding repairs of the RV.  He also stated that he asked North Trail to identify a suitable repair company in Louisiana and that North Trail provided him a list of several companies in Louisiana, from which Mr. Romero selected Billy

---

[46]   Rec. Doc. 13-1.

[47]   Rec. Doc. 13-1; Rec. Doc. 7-1 at 5.

[48]   Rec. Doc. 19-1 at ¶3.

[49]   Rec. Doc. 13-1.

[50]   Rec. Doc. 13-1.

Thibodeaux's Premiere RV, Inc. in Scott, Louisiana.  Mr. Romero used that company five or six times to attempt repairs on the RV, and Newmar paid the bills.

Mr. Wicks searched his file and found no e-mail correspondence between he and Mr. Romero.[51]  He does not recall receiving any telephone calls from Mr. Romero concerning complaints about the RV.[52]  He stated that he learned about the Romeros' complaints only after he made a follow-up call to Mr. Romero to see if he was happy with the new RV.[53]  Mr. Romero told him that Mr. Romero had his own personal mechanic who took care of the RV that he was trading in.[54]

According to Mr. Wicks, Mr. Romero never requested information from him or from any of North Trail's service personnel concerning acceptable repair facilities in Louisiana.[55]  Mr. Wicks advised Mr. Romero that if he was not going to bring the RV back to North Trail for service, then he should ask Newmar for a list of recommended service facilities.[56]  Mr. Wicks is not familiar with Billy Thibodeaux's repair shop, and he stated that, after reviewing its website, he would not refer a North

---

[51]     Rec. Doc. 19-1 at ¶4.

[52]     Rec. Doc. 19-1 at ¶6.

[53]     Rec. Doc. 19-1 at ¶7.

[54]     Rec. Doc. 19-1 at ¶5.

[55]     Rec. Doc. 19-1 at ¶8.

[56]     Rec. 19-1 at ¶8.

Trail customer to that facility for repairs on the type of RV purchased by Mr. Romero.[57]  North Trail responded to interrogatories propounded by the plaintiff by denying that it had conducted business with Billy Thibodeaux's at any time.[58]

Mrs. Romero stated, in her affidavit, that, after Billy Thibodeaux's repair shop was unable to repair the RV, Newmar selected Dixie RV of Hammond to make repairs, Dixie RV attempted repairs on two or three occasions, and Newmar paid for Dixie's services.[59]  Newmar also arranged to have the RV inspected and/or repaired by Newmar in Indiana.[60]  To facilitate this, Newmar had the RV transported from Louisiana to Indiana and back again.[61]   According to Mr. Romero, the RV was not successfully repaired.[62]

Based on these facts, the plaintiffs have established the following contacts between North Trail and the State of Louisiana:  North Trail established a website, North Trail's employee spoke on the telephone with the Romeros, North Trail accepted a credit card payment and a wire transfer payment from the Romeros'

---

[57]     Rec. 19-1 at ¶9.

[58]     Rec. Doc. 20-1 at 2-3, Interrogatory No. 7.

[59]     Rec. Doc. 16-2.

[60]     Rec. Doc. 13-1.

[61]     Rec. Doc. 13-1; Rec. Doc. 16-2.

[62]     Rec. Doc. 13-1.

Louisiana bank, North Trail delivered the RV to the Romeros in Louisiana and picked up their trade-in RV, and North Trail paid sales taxes to Louisiana in connection with the sale.[63] It was alleged that North Trail recommended a Louisiana repair shop to the Romeros, but the plaintiffs did not prove that to be the case. Significantly, there is no evidence that North Trail ever sold any other vehicle to a Louisiana resident or had any kind of continuing business relationship with anyone in Louisiana. It thus appears that this was a one-time sale from a Florida company to a Louisiana resident.

The fact that this is the only proven sale by North Trail to a Louisiana resident is significant. The sale of products to customers in the forum state, unless it amounts to a substantial portion of an entity's business, is an insufficient basis for general jurisdiction. In a commercial context, like the one presented here, in order for there to be general jurisdiction over a defendant business, the defendant must have a business presence in the forum state such that the defendant can be said to be doing business in that state.[64] No such evidence was presented here. A single sale falls far short of establishing the continuous and systematic business contacts necessary to

---

[63]    Louisiana law requires that, when an out-of-state vehicle is registered in Louisiana, the owner must pay use taxes. "The Louisiana resident pays a local sales tax, while the person who moves into the state pays a comparable use tax." *Fitzgerald v. Stalder*, 1998-0711 (La. App. 1 Cir. 04/01/99), 731 So.2d 500, 501, *writ denied*, 1999-1821 (La. 07/02/1999), 747 So.2d 30, *cert. denied*, 528 U.S. 1020, 120 S.Ct. 529, 145 L.Ed.2d 410 (1999).

[64]    *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

establish such a business presence or to confer general jurisdiction and, as is discussed more fully below, no other such contacts were proven by the plaintiffs in this case.

Specific jurisdiction is proper only when the proven contacts result from the defendant's purposeful contact and not the unilateral activity of the plaintiff.[65] Therefore, the actions of the plaintiffs in viewing North Trail's website, calling North Trail to inquire about the RV, visiting North Trail's show room, and arranging to have payments made in Florida are wholly unrelated to the issue of North Trail's contacts with Louisiana. Neither the fact that the plaintiffs are residents of Louisiana[66] nor the fact that a nonresident defendant entered into a contract with a Louisiana resident is sufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over the nonresident defendant.[67] Similarly, the seller's knowledge that the RV would be garaged in Louisiana is insufficient.[68] The telephone communications between North Trail and the plaintiffs

---

[65]    *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).

[66]    *Performance Equipment, LLC v. Morbark, Inc.*, 2008 WL 5169397, 4 (M.D. La. 2008).

[67]    *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996); *Stuart v. Spademan*, 772 F.2d at 1193; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (U.S. 1985).

[68]    See, e.g., *Growden v. Ed Bowlin & Associates, Inc.*, 733 F.3d 1149, 1152 (5th Cir. 1984); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978).

are also insufficient. "[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's law."[69] This is particularly so in this case because it was the Romeros who initiated the telephone contacts with North Trail rather than the other way around.

The fact of national advertising alone cannot establish specific jurisdiction.[70] In order to determine whether the advertising constitutes a meaningful contact, there must be evidence indicating how widely and frequently the publications were circulated and the amount of business gained from the advertisements.[71]  No such evidence was presented here.

Even when a sale is the direct result of national advertising – which is not the case here – the necessary minimum contacts might still be lacking.  In *Martin & Mahoney v. Patton*,[72] the plaintiff law firm responded by mail to the defendant's advertisement in a national trade publication offering an airplane for sale.  The plaintiff was located in Louisiana, and the defendant was located in Michigan.

---

[69]     *Holt Oil v. Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Stuart v. Spademan*, 772 F.2d at 1193-94.

[70]     *Growden v. Ed Bowlin*, 733 F.2d at 1151, citing *Loumar v. Smith*, 698 F.2d 759, 763-64 (5th Cir.1983).

[71]     *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136-37 (5th Cir. 1987).

[72]     863 F.Supp. 311, 315 (E.D. La. 1994).

Telephone and fax correspondence ensued, the plaintiff's pilot went to Michigan to inspect the plane and make a test flight, and a contract for the sale of the plane was executed in Michigan. The deal then fell apart, and suit was filed in Louisiana. The court found insufficient contacts with Louisiana to support jurisdiction. In the instant case, the facts are even less persuasive since there is no evidence that the Romeros purchased their RV in response to magazine advertising.

The fact that North Trail has a website that permits potential purchasers to view RVs that are for sale is similarly insufficient to establish minimum contacts. The Romeros suggest that this Court should follow *Crummey v. Morgan*,[73] but that case is distinguishable. In *Crummey*, the Louisiana plaintiff purchased an RV from an out-of-state seller on eBay. The court applied the sliding scale articulated in *Zippo Mfg. Corp. v. Zippo Dot Com, Inc.*[74] and found that there is a spectrum of situations in which business is done over the internet.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into a contract with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than

---

[73]    2007-0087 (La. App. 1 Cir. 08/08/07), 965 So.2d 497.

[74]    952 F.Supp. 1119, 1124 (W.D. Pa. 1997). This analysis was adopted by the Fifth Circuit in *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.[75]

In *Crummey*, the court found that using the eBay website to market and sell an RV to a Louisiana resident did not present an "information only" situation, and it held that "sufficient minimum contacts, effectuated by electronic communications, have been established to maintain personal jurisdiction."[76]  While it is certainly true that a defendant's contacts with a state "may be effectuated by mail and electronic communications, as well as physical presence,"[77] the only electronic communication that North Trail initiated was the establishment of its website.  It is undisputed that nothing can be purchased through North Trail's website.

Therefore, the situation presented here is not analogous to that of *Crummey*, but is more like that of *Quality Design and Construction, Inc. v. Tuff Coat Manufacturing, Inc.*,[78] which also involved a passive website.  There, the court applied the *Zippo* sliding scale and determined that Tuff Coat's maintenance of an informational website that was accessible to internet users all over the world but did

---

[75]     *Crummey v. Morgan*, 965 So.2d at 502-03 (internal citations omitted).

[76]     *Crummey v. Morgan*, 965 So.2d at 504.

[77]     *Crummey v. Morgan*, 965 So.2d at 502, citing *Spomer v. Aggressor Internat'l, Inc.*, 2000-1646 (La. App. 1 Cir. 09/28/01), 807 So.2d 267, 272, *writ denied*, 2001-2886 (La. 01/25/02), 807 So.2d 250.

[78]     2005-1712 (La. App. 1st Cir. 07/12/06), 939 So.2d 429, 435.

not permit a potential purchaser to actually buy a product was insufficient to establish a Louisiana court's personal jurisdiction over Tuff Coat.  The court found that, even though Tuff Coat made five sales to Louisiana entities, Tuff Coat's actions with regard to its website did not rise to the level of the purposeful availment necessary for personal jurisdiction.

A similar result was reached in *Williams v. Frank Parra Auto Plex, Inc.*[79] There, the automobile dealer had an interactive website that permitted customers to communicate with the sales staff through a "chat live" feature, but it was not possible to purchase a vehicle online.  Purchases could be made only at the dealership's location in Texas.  This factor was considered along with others in determining that a Louisiana court lacked personal jurisdiction over the Texas dealership.

In its briefing, North Trail suggests that this Court rely upon *Williams* in deciding this case.  Although *Williams* provides some guidance because it discusses online communications, it is factually distinguishable.  *Williams* involved Texas residents who purchased a vehicle from a Texas seller after the vehicle had been customized by the vehicle's original seller, a Texas car dealership.  The plaintiffs were injured when the customized modifications dislodged during a crash in Louisiana.  In *Williams*, the only connection with Louisiana was the fortuitous fact

---

[79]     2005-737 (La. App. 3 Cir. 03/22/06), 929 So.2d 755, 560-61.

that the accident occurred there.  The facts are too different from those presented here to be relied upon in deciding North Trail's motion.

On the other hand, the *Quality Design* decision, cited above, is consistent with others in which only one or a limited number of sales by a nonresident defendant to a Louisiana plaintiff has been found insufficient to establish the minimum contacts necessary for personal jurisdiction.  In *Louisiana Plastic Converting Corp. v. Plexchem Internat'l, Inc.*, for example, the court said:

> we find that there were not sufficient contacts between the defendant and this state to justify the exercise of personal jurisdiction.  The defendant has no place of business in this state, is not a Louisiana corporation, does not have agents or employees in this state, does not have movable or immovable property in Louisiana and no one traveled to this state to negotiate the sale which is the subject of this dispute. Further, the defendant and the plaintiff did not have a continuing business relationship.[80]

The same could be said of North Trail in the instant case.

North Trail's delivery of the RV to Louisiana is also insufficient to establish personal jurisdiction.  A seller's shipment of purchased items into the forum state is not the type of purposeful direction of activities that permits the forum state to exercise jurisdiction over the seller.[81]  Delivery of a purchased vehicle to another state

---

[80]    *Louisiana Plastic Converting Corp. v. Plexchem Internat'l, Inc.*, 26,943 (La. App. 2 Cir. 05.10.95), 655 So.2d 630, 636.

[81]    *Stuart v. Spademan*, 772 F.2d at 1193.

-19-

is also insufficient.  "If a seller of chattels is subject to suit wherever a customer requests delivery, then the chattel has become its agent for service of process – a conclusion the United States Supreme Court has expressly rejected."[82]

In *Carter v. Estes*, a Louisiana plaintiff purchased a vehicle from a Texas seller.  There, the court said:

> Plaintiff sought out the defendant in Texas to purchase the vehicle. Defendant merely delivered the vehicle and accepted payment in Louisiana.  The performance of these acts alone is not sufficient to subject the seller to jurisdiction in Louisiana, absent any other ties to this jurisdiction.[83]

The cited facts mirror those of the instant case.  The Romeros sought out North Trail, they travelled to Florida to purchase the RV, and North Trail merely accepted payment from Louisiana and delivered the RV to the Romeros in Louisiana.  That is an insufficient basis for finding that North purposefully directed its activities to Louisiana.

In deciding whether the plaintiffs have made the requisite prima facie showing[84] that North Trail's contacts with Louisiana are sufficient to establish personal jurisdiction over North Trail, the number of contacts and the totality of the

---

[82]   *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Sup. Ct. Tex. 2005), citing *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980).

[83]   *Carter v. Estes*, 554 So.2d 827, 829 (La. App. 1 Cir. 1989).

[84]   *Luv N'care v. Insta-Mix*, 438 F.3d at 469.

circumstances must be considered.[85]  The plaintiffs have proven only one sale from North Trail to Louisiana buyers, advertising by North Trail in two magazines, the existence of a passive website, telephone communications, the acceptance of payment from out of state, and delivery of the purchased item to the buyers.  Considered individually and collectively, these contacts are insufficient for the exercise of personal jurisdiction over North Trail.  Consequently, the plaintiffs have not satisfied their burden of proving that North Trail has minimum contacts with Louisiana sufficient to meet the first prong of the specific jurisdiction test.  Similarly, the plaintiffs have not satisfied their burden of proving the minimum contacts necessary for general jurisdiction.

Because the undersigned has found that North Trail's contacts with the State of Louisiana are insufficient to establish the minimum contacts needed for personal jurisdiction, whether specific or general, there is no need to proceed to the second step of the jurisdictional analysis, which examines whether exercising specific jurisdiction over the defendant comports with fair play and substantial justice.[86]  The fairness of exercising jurisdiction is analyzed only after minimum contacts are established.

---

[85]     *Stuart v. Spademan*, 772 F.2d at 1192.

[86]     *Panda v. Potomac*, 253 F.3d at 870.

The undersigned finds that the plaintiffs have not proven that this Court has personal jurisdiction over North Trail.  Consequently, the plaintiffs' claims against North Trail must either be dismissed or transferred to the appropriate federal district court in Florida.

**B.   NORTH TRAIL'S MOTION TO TRANSFER**

North Trail alternatively seeks transfer of this matter to a Florida court, under either 28 U.S.C. § 1404(a), which permits a transfer of venue for the convenience of the parties and the witnesses, or under 28 U.S.C. § 1406, which permits a transfer of venue when the suit was filed in an improper venue.[87]

The general rule regarding venue is found in 28 U.S.C.A. § 1391(a), which reads as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

---

[87]     *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001).

28 U.S.C. § 1406 provides that: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district is "wrong" when obstacles exist that might impede an expeditious and orderly adjudication of cases and controversies on the merits, including lack of personal jurisdiction.[88]   Once a district court finds that it lacks personal jurisdiction, it possesses "broad discretion" in deciding whether to dismiss or transfer.[89]   Fifth Circuit precedent supports transfer of a case from a federal court lacking personal jurisdiction to one possessing it, even if the case was removed from a state court that itself lacked personal jurisdiction."[90]

If this action is not transferred, the plaintiffs could potentially be barred by the applicable statutes of limitation from litigating their claims against North Trail, and the other defendant in this lawsuit has also sought transfer of the action to the Middle District of Florida.  Accordingly, the undersigned finds that it would be in the interest of justice to transfer this case to the Middle District of Florida rather than dismissing it and recommends that North Trail's motion to transfer be granted.

---

[88]     *Goldlawr, Inc. v. Heinman*, 369 U.S. 463, 466-67 (1962).

[89]     *Caldwell v. Palmetto State Savings Bank*, 811 F.2d 916, 919 (5th Cir. 1987).

[90]     *Bentz v. Recile,* 778 F.2d 1026, 1027 (5th Cir. 1985).

C.    NEWMAR'S MOTION TO TRANSFER

Newmar does not dispute that it could be sued in Louisiana, but, like North Trail, it also seeks transfer of the plaintiffs' claims against it to the United States District Court for the Middle District of Florida.  Newmar seeks transfer solely under Section 1404(a), which permits transfer for the convenience of the parties and the witnesses, in the interest of justice, to another other district or division where the suit might have been brought.  Because the undersigned has already found that it would be in the interest of justice to transfer the plaintiffs' case to the Middle District of Florida, and because Newmar's motion similarly seeks to have the plaintiffs' claims against it transferred to that same forum, the undersigned pretermits further discussion of Newmar's motion, and recommends that the motion be denied as moot.

CONCLUSION

The undersigned finds that the plaintiffs have failed to demonstrate that North Trail has sufficient minimum contacts with the State of Louisiana to permit the exercise of personal jurisdiction over North Trail in this forum.  Accordingly, the undersigned recommends that North Trail's motion to dismiss for lack of personal jurisdiction (Rec. Doc. 7) be denied, that its alternative motion to transfer (Rec. Doc. 7) be granted, and that this matter be transferred to the United States District for the

Middle District of Florida.  The undersigned further recommends that Newmar's motion to transfer (Rec. Doc. 14) be denied as moot.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed this 20th  day of August, 2010, at Lafayette, Louisiana.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)